UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 02-21091-CIV-JORDAN

FILED by____ D.C.

OCT 1 8 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

| | |
|---|---|
| THERESA BRYANT, | ) |
|     Plaintiff | ) |
| vs. | ) |
| THE SCHOOL BOARD OF MIAMI-DADE COUNTY, | ) |
|     Defendant | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Theresa Bryant sues her former employer, the School Board of Miami-Dade County for *quid pro quo* sexual harassment and hostile working environment pursuant to Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e *et seq.* The School Board moves for summary judgment on both of Ms. Bryant's claims. For the reasons set forth below, the School Board's motion for summary judgment [D.E. 18] is GRANTED as to both the *quid pro quo* and the hostile working environment claims.

## I. THE RULE 56 STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hilburn v. Murata Elecs. North Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to Ms. Bryant, the non-moving party, there is evidence on which a jury could reasonably find a verdict in her favor. *See Liberty Lobby*, 477 U.S. at 251; *Hilburn*, 181 F.3d at 1225; *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

OCT 2 0 2004

Rec'd in MIA Dkt____

## II. RELEVANT FACTS[1]

In January of 2000, Ms. Bryant began her employment as an accounting specialist with the School Board in the contracted programs division of its general accounting department.[2] *See* Def. Answer at ¶ 5; Theresa Bryant Depo. [D.E. 37] at 21. At all relevant times, Ms. Bryant's immediate supervisor in the contracted programs division was Frederick Jones. Def. Facts ¶ 1. Ms. Bryant was hired to assist Mr. Jones and to prepare reports.

### A. RECLASSIFICATION

In her complaint, Ms. Bryant alleges that Mr. Jones "assured her that, if she obtained her accounting degree prior to his retirement, he would recommend her for a particular professional level position." *See* Complaint at ¶ 7. Contrary to Ms. Bryant's assertions, Mr. Jones has not "conceded that he had authority to recommend his subordinates for reclassifications and pay upgrades, and that, after refusing to do the same for plaintiff for a period of time, he eventually offered to do so." *See* Pl. Opp. Memo at 12. In fact, the record shows that the opposite is true. Ronda Martin, the administrative director of compensation administration, has testified without contradiction that Mr. Jones had no authority to grant or deny any reclassifications. *See* Ronda Martin Aff. [D.E. 21] at ¶ 7.

The process for reclassification at the School Board is as follows: requests for reclassification first go to Ms. Martin, Administrative Director of Compensation Administration, who then recommends the requests to Nelson Diaz, the Deputy Superintendent for Personnel Management. *See id.* at ¶ 4. Employees and/or supervisors may request reclassifications of their position at any time if they believe their job responsibilities have changed significantly. Def. Facts ¶ 6.

In July 1999, before Ms. Bryant began working in the Contracted Programs department, Sandra Hicks and Donna Valdes, also accounting specialists in the same department, requested reclassifications of their positions. Mr. Jones was involved in the reclassification process for these two women, but, significantly, these reclassifications were requested by Rudy Rodriguez, the School Board's controller, and recommended by Ms. Martin. Paygrade 23 – the paygrade Ms. Bryant, Ms. Valdes, and Ms. Hicks

---

[1] Where there is a conflict in the record, I view the facts in the light most favorable to Ms. Bryant.

[2] Prior to working as an accounting specialist, Ms. Bryant held another position with the School Board.

2

were all in – is a high clerical position from which it is difficult to upgrade. Martin Aff. ¶ 14. Ms. Hicks and Ms. Valdes were, however, reclassified after submitting their requests. Def. Facts ¶ 5.

At the time of Ms. Hicks' and Ms. Valdes' reclassifications, Ms. Bryant subjectively believed that a pay upgrade for one person within a particular pay grade was to apply to all similarly situated persons, *see* Pl. Facts at 3, but she has not submitted any evidence that this was in fact the School Board's policy. In fact, Ms. Bryant was advised by people at the wage and salary division that she did not have to wait for Mr. Jones to request reclassification, and that she could make the request herself. *See* Bryant Depo. at 130.[3] The United Teachers of Dade Collective Bargaining Agreement also provides that employees can request reclassifications at any time. Ms. Bryant, however, never formally requested that her position be reclassified. *See* Bryant Depo. at 126-127. Despite her satisfactory performance appraisals, and Mr. Jones' statement that he would look into her being reclassified, Ms. Bryant was never reclassified. Significantly, even if Ms. Bryant had requested reclassification, the request would have been denied because she was too new to her department and had recently received a promotional pay increase. Martin Aff. ¶ 6.

### B. MR. JONES' BEHAVIOR

Ms. Bryant alleges that she was discriminated against by Mr. Jones in connection with her employment as an accounting specialist for the School Board. Ms. Bryant points to certain incidents, which occurred after being in the contracted programs division for approximately four months. For example, Mr. Jones once shoved his shoulder into Bryant's and simultaneously grabbed her knee and shook it. *See* Bryant Depo. at 90. Mr. Jones would stand and sit close to Ms. Bryant when working on the computer together. *See id.* at 97. He once asked her why she hid her sexuality. *See id.* at 95. He touched or slapped her shoulder and twice brushed her breasts with his arm. *See id.* at 101. On another occasion, under the guise of touching Ms. Bryant in the area of her upper arm, Mr. Jones touched her breast. *See id.* at 102. She told him she believed he was doing this intentionally and he smirked. During a conversation he once placed his hands over hers. *See id.* at 105, 115.

---

[3] In her deposition, Ms. Bryant said that a person in the wage and salary division told her that Mr. Jones had indicated that he was not going to include Ms. Bryant in the "pay upgrade." This testimony is inadmissible double hearsay, and Ms. Bryant has declined to provide the name of the employee at issue. *See* Bryant Depo. at 129.

3

Once, when Ms. Bryant wore a dress and makeup to work, Mr. Jones told her she looked nice and asked if she had a lunch date, if she was going to a happy hour, and if she was going out that night. *See id.* at 74-75, 111-112. He leered at her in a sexually provocative manner. Another time, Jones positioned himself inappropriately close to Ms. Bryant, sniffed at her and told her that her perfume smelled nice. *See id.* at 118. He often looked at her in a way that made her think he was coming on to her and talked in a sexy voice. *See id.* at 228.

A year and a half after transferring to the contracted programs division, Ms. Bryant testified that she decided to ignore Mr. Jones' comments as a coping mechanism. *See* Pl. Facts at 4. This was allegedly perceived by him as acquiescence. He said, "I believe you're beginning to understand me." *See* Bryant Depo. at 148, 167. When he believed she was giving in to her advances, he expressed a willingness to reclassify her. He stated in the same conversation "it's time to have your position reclassified." *See id.* at 149, 161. He subsequently stated at a staff meeting that he was working on plaintiff's reclassification. *See id.* at 149.

Around mid-2000, Ms. Bryant complained to Gwendolyn Kidney, an assistant superintendent in personnel, concerning Mr. Jones' conduct. *See id.* at 252-255. Ms. Bryant also attended an EEEO meeting in which she became familiar with the process of filing a complaint. Ms. Kidney did not help Ms. Bryant, so she filed a complaint of discrimination with the School Board's Civil Rights and Diversity Compliance office (formerly the Equal Educational and Employment Opportunities office "EEEO") in July of 2001. *See* Pl. Facts at 4. Adeyela Albury then began an investigation of the allegations. *See* Adeyela Albury Depo. at 7, 8, 22. Sandra Hicks also filed a complaint against Mr. Jones at the same time as Ms. Bryant. *See id.* at 20. Ms. Albury interviewed people in relation to both of these complaints. *See id.* at 7. The investigation concluded that Mr. Jones' behavior did not constitute *quid pro quo* or hostile work environment; however, his behavior was found to be unfitting of a school board employee and disciplinary action was taken against him, including a written reprimand, reassignment to a new location, and loss of supervisory responsibilities. *See* Thomasina O'Donnell Aff., Ex. A [D.E. 23]. Ms. Bryant subsequently filed a charge of discrimination with the EEOC. *See* Complaint ¶ 3. The EEOC issued a Notice of Right to Sue. *See id.*

Though Mr. Jones was stripped of his supervisory roles, he still had to approve work done by people in his department. *See* Cameline Owens Depo. [D.E. 41] at 56. He was still responsible for the work that Ms. Bryant produced. *See* Frederick Jones Depo. [D.E. 38] at 47. Due to the continued

4

harassment, Ms. Bryant left her job at the School Board and now has a job in another field. *See* Pl. Facts at 9.

### C. THE SCHOOL BOARD'S POLICY AGAINST SEXUAL HARASSMENT

The School Board has an official and written policy against sexual harassment. *See* Susan Rothstein Aff. ¶ 4 [D.E. 22]. The School Board has posted notices of the policy by way of posters throughout the facilities. *See id.* ¶ 5. The policy's complaint procedure is also printed on the back of every paycheck. *See id.* ¶ 7. Ms. Bryant was not subjectively aware of the existence and substance of the School Board's policy against sexual harassment at the time; she only saw the signs after filing her complaint. *See* Bryant Depo. at 178.

### III. ANALYSIS

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Sexual harassment can constitute discrimination based on sex for purposes of Title VII. *See Johnson v. Booker T. Washington Broadcasting Serv., Inc.*, 234 F.3d 501, 507-508 (11th Cir. 2000) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1244-45 (11th Cir.1999) (*en banc*)). Courts recognize two types of sexual harassment: harassment that results in a tangible employment action (known as "*quid pro quo*" harassment), and harassment that does not result in a tangible employment action (known as "hostile work environment" harassment). *See Johnson*, 234 F.3d at 508 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760-63 (1998)).

In order to prove sexual harassment, Ms. Bryant must generally show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the terms and conditions of her employment and create a discriminatorily abusive working environment; and (5) that there is a basis for holding the employer liable. *See Johnson*, 234 F.3d at 508; *Mendoza*, 195 F.3d at 1245 (citing *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1982)).[4]

---

[4] In *Johnson*, a *quid pro quo* case, the Eleventh Circuit applied these five factors from *Mendoza*, event though *Mendoza* was a hostile environment case. *See Johnson*, 234 F.3d at 508, n.7. Prior to *Johnson*, the Eleventh Circuit held that "[t]he prima facie elements for [a *quid pro quo*] cause of action that the plaintiff must prove include: (1) the employee belongs to a protected group;

As Ms. Bryant has asserted claims for both *quid pro quo* and hostile work environment, I will discuss them each separately.

## A. QUID PRO QUO HARASSMENT

The School Board does not dispute that Ms. Bryant belongs to a protected group nor that the alleged harassment was based on her status as a woman. It argues, however, that the undisputed material facts establish as a matter of law that she has failed to satisfy the remaining elements of her *quid pro quo* claim. I agree.

To establish a claim for *quid pro quo* harassment, Ms. Bryant must show "that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands." *See Ellerth*, 524 U.S. at 753-54. *Quid pro quo* sexual harassment occurs when "submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual." 29 C.F.R. § 1604.11(a)(2) (2002). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. *See also Johnson*, 234 F.3d at 512; *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1239 n. 1 (11th Cir. 1998). Employers are vicariously liable when a discriminatory act results in a tangible employment action. *See id.* at 760. An adverse employment action must affect a term or condition of employment. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). In *Ellerth*, 524 U.S. at 760-761, the Supreme Court stated that a tangible employment action may be a failure to promote.

---

(2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; and (4) *the employee's reaction to the unwelcome behavior affected tangible aspects of the employee's compensation, or terms, conditions or privileges of employment.*" *See Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1361 (11th Cir. 1994) (emphasis added).

*Johnson* reconciled *Mendoza* with *Virgo*, explaining that the *Mendoza* factors would apply to any sexual harassment case, regardless of whether the claim was for *quid pro quo* or hostile environment. *Johnson*, 234 F.3d at 508, n.7. *Johnson* reasoned that the fourth *Mendoza* factor, whether or not the harassment was severe or pervasive, jibes with the *Virgo* analysis as well. *See id.* In other words, if a supervisor retaliates against a worker for failing to give in to sexual advances, those advances will rise to the level of "severe or pervasive." *See id.*

6

Ms. Bryant argues that her refusal of Mr. Jones' advances resulted in a tangible employment action against her, namely, that she did not receive her reclassification. She contends that Mr. Jones had the authority to recommend his subordinates for reclassifications and pay upgrades, and that, after refusing to recommend her for a period of time, he eventually offered to do so after she stopped becoming verbally combative with Mr. Jones. On the other hand, the School Board argues that Mr. Jones never made any threats or promises about re-classifying Ms. Bryant's job. *See* Def. Memo at 3-4. While this may or may not be true, it is immaterial to the issue of whether he actually had the authority to take a tangible employment action against Ms. Bryant.

As the School Board correctly points out, the record shows that Mr. Jones had no actual authority to make the reclassification. Even though the Request for Reclassification for Non-Instructional Positions requires a supervisor's comments and signatures, *see* Martin Aff., Ex. C, Mr. Jones was not the actual decision maker. The Collective Bargaining Agreement clearly provides that the supervisor's recommendation is not necessary for a reclassification. Ms. Bryant may have perceived Mr. Jones as the person responsible for not including her in the reclassification. *See* Owens Depo. at 53. Any such subjective perception on Ms. Bryant's part, however, is belied by the fact that she could have sought the reclassification herself at any time. Ms. Bryant admitted that she never directly requested that her position be reclassified or upgraded, even though she was advised she could do it on her own. She merely inquired of Mr. Jones as to why her position was not included in the upgrade of her co-workers. Moreover, the uncontradicted evidence shows that even if she had requested a reclassification or upgrade, she wouldn't have received it. Ms. Bryant suffered no other economic harm as a result of her alleged refusal to comply with Mr. Jones' sexual advances. She was never terminated, demoted, or disciplined. Her position, salary and job benefits never changed. Indeed, she received consistently good evaluations from Mr. Jones throughout her employment. In sum, Mrs. Bryant has not proven that there is a causal link between Mr. Jones' sexual advances and her inability to obtain a reclassification.

In addition to the lack of causation, the School Board relies heavily on the *Ellerth* and *Faragher* defenses in their motion for summary judgment. As the School Board correctly observes, these cases hold that an employer is entitled to judgment if it shows by a preponderance of the evidence (1) that no tangible employment action has been taken against the plaintiff; (2) that it exercised reasonable care to prevent and correct sexual harassment; and (3) that the plaintiff failed to take advantage of the

employer's mechanisms for prevention and correction of sexual harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 803 (1998); *Ellerth*, 524 U.S. at 765. Because, however, I find that no tangible employment action was taken against Ms. Bryant, the *quid pro quo* claim fails. Thus, I need not analyze the *Ellerth* and *Faragher* defense for the purpose of the School Board's summary judgment motion.

Viewed in the light most favorable to Ms. Bryant, the evidence indicates that Mr. Jones lacked the authority to reclassify Ms. Bryant's job. Moreover, Ms. Bryant knew that she could have requested reclassification herself, but she did not. Furthermore, any such request would have been denied based on her experience and recent salary increase. Thus, the causation element required for a tangible employment action is missing. On this record, the School Board's motion for summary judgment is granted as it relates to Ms. Bryant's *quid pro quo* claim.

### B. HOSTILE WORK ENVIRONMENT

Next, I address whether the alleged harassment by Mr. Jones was severe or pervasive enough to make Ms. Bryant's working environment intolerable. *See Mendoza*, 195 F.3d at 1245. Unlike a *quid pro quo* theory, whether harassing conduct is severe or pervasive under a hostile work environment theory is not contingent on the existence of a tangible employment action. The determination of whether harassing conduct is severe or pervasive enough to be actionable has both a subjective and an objective component. *See id.* at 1246. "The employee must 'subjectively perceive' the harassment as sufficiently severe or pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." *Id.* Ms. Bryant has shown, for summary judgment purposes, that she subjectively perceived the harassment as severe and pervasive. But the inquiry does not end there.

Four factors should be considered in determining whether harassment has objectively altered an employee's terms or conditions of employment: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *See Mendoza*, 195 F.3d at 1246. I must examine the conduct in context, and determine under the totality of the circumstances whether the conduct was sufficiently severe or pervasive to alter the terms or conditions of employment. *See id.*

The conduct that Ms. Bryant contends created a hostile working environment can be summarized as follows: (1) the touching of her breast on two or three occasions; (2) the question as to

why she hides her sexuality; (3) Mr. Jones asking her whether she had plans for lunch, happy hour, or that evening; (4) telling her she smelled nice; (5) sitting close to her; (6) placing his hands on top of hers; (7) the comment that she was now beginning to understand him; and (8) shoving her shoulder and shaking her knee on another occasion.

For purposes of this summary judgment motion, Ms. Bryant has provided sufficient evidence to satisfy the subjective component of this test. From an objective standpoint, however, I agree with the School Board that the actions by Mr. Jones, under *Mendoza*, are not sufficient to ground liability under Title VII. When viewed from a totality of the circumstances, the misconduct that Ms. Bryant alleges is not sufficiently severe or pervasive to alter the terms and conditions of Ms. Bryant's employment and create a hostile work environment. First, the alleged sexual harassment was not frequent. Ms. Bryant alleges a couple of incidents of undoubtedly offensive physical touching, and a few harassing comments. *See Faragher*, 524 U.S. at 788 ("'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"); *Burnett v. Tyco Corporation*, 203 F.3d 980, 985 (6th Cir. 2000) ("[A] single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment.").

The lack of frequency tends to show that the sexual misconduct did not unreasonably interfere with Ms. Bryant's work. *See Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) ("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, long lasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment."). *See, e.g., Mendoza*, 195 F.3d at 1249 (five incidents over nine months too infrequent); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995) (nine incidents over seven months too infrequent).

Ms. Bryant must establish not only that she subjectively perceived the environment as hostile and abusive but that a reasonable person would perceive it as such as well. *See Mendoza* 195 F. 3d at 1246; *Faragher*, 524 U.S. at 788. Other people who interacted with Mr. Jones and worked with him did not take similar comments made to them as harassment. *See* Owens Depo. at 12; Marvin Webster-Burney Depo. at 40. What one employee might perceive as conduct which crosses the proverbial line, another might perceive as banter. *See Faragher*, 524 U.S. at 788.

Of all the conduct about which Ms. Bryant complains, the most serious is Mr. Jones touching or brushing her breast and placing his hand on her knee. He obviously should not have done either of those things, but those were only two or three incidents in a period of a year and half during which they were interacting. In determining the severity of the conduct, the physical touching alleged by Ms. Bryant can certainly be viewed as a serious transgression. However, viewed from a totality of the circumstances, the isolated physical incidents and the handful of comments are not sufficiently severe to compensate for their lack of pervasiveness. As noted in *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998), that intersexual flirtation is part of ordinary socializing in the workplace and should not be mistaken for discriminatory conditions of employment. Thus, examining Mr. Jones' alleged conduct in its totality under *Mendoza*, there is not an issue of material fact as to whether the conduct was sufficiently severe or pervasive enough to alter the terms or conditions of Ms. Bryant's employment. Many decisions throughout the circuits have rejected sexual-harassment claims based on conduct that is as serious or more serious that the conduct at issue. *See, e.g., Gupta*, 212 F.3d at 585 (holding that hostile work environment could not be established with allegations of staring, touching the plaintiff's ring and bracelet once, and invitations to lunch). *See Cox v. Denny's Inc.*, 1999 WL 1317785, at *3 (M.D. Fla. Dec. 22, 1999) (finding that an isolated incident of physical touching in which a co-worker grabbed the plaintiff's breast and crotch, in addition to numerous comments, was insufficient to establish liability under Title VII); *Chalupnik v. Continental Casualty Company*, 1995 WL 348011, at *5 (N.D. Ill. June 8, 1995) (finding that one instance of physical touching, in which a co-worker placed his foot on the plaintiff's crotch, coupled with a handful of harassing comments, was insufficient to ground Title VII liability); *Shepherd v. Comptroller of Public Accounts of Texas*, 168 F. 3d 871, 872-75 (5th Cir. 1999) (holding that several incidents over a two year period, including comment "your elbows are the same color as you nipples," another comment that plaintiff had big things, touching plaintiff's arm, and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); *Sprague v. Thorn Americas, Inc.*, 129 F. 3d 1355, 1365-66 (10th Cir. 1997) (holding five "sexually-orientated, offensive" statements over sixteen months insufficient to show hostile environment, even though one of the harasser's statements occurred while he put his arm around plaintiff, looked down her dress and said, "well you got to get it when you can"); *Black v. Zaring Homes, Inc.*, 104 F. 3d 822, 823-24 (6th Cir. 1997) (reversing jury verdict and finding conduct was "sex-based" but insufficiently severe or pervasive to state actionable claim, where conduct over a

10

fourth-month period involved repeated sexual jokes; one occasion of looking plaintiff up and down, smiling and stating, there's "nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks ;" stating "Just get the broad to sign it"); *Baskerville v. Culligan Int'l Co.*, 50 F. 3d 428, 430 (7th Cir 1995) (holding insufficiently severe or pervasive to support a hostile-environment claim nine instances of offensive behavior over seven months including repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated masturbation).

This is not a case like *Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238 (11th Cir. 2004), where summary judgment on a hostile work environment claim was improper. In *Hulsey*, the supervisor made inappropriate comments or took inappropriate actions on 18 occasions in a 2 ½ week period, including direct propositions for sex, following the plaintiff into the restroom, repeated attempts to touch the plaintiff's breasts, place his hands down the plaintiff's pants, and pull off the plaintiff's pants. *See id.* at 1248.

Additionally, the School Board asserts that Ms. Bryant's hostile work environment claim is barred by the affirmative defense articulated in *Faragher*, 524 U.S. at 807. However, because I find that Mr. Jones' conduct is not sufficiently severe or pervasive to support a hostile environment claim, I need not analyze the *Faragher* defense for the purpose of the School Board's summary judgment motion.

I am not minimizing the impropriety of Mr. Jones' actions. However, Title VII is not a "federal 'civility code,'" *Mendoza*, 195 F.3d at 1245, and under Eleventh Circuit precedent, what happened here did not constitute a hostile work environment. Therefore, I conclude that the School Board's motion for summary judgment with respect to hostile work environment should be granted.

### IV. CONCLUSION

For the reasons stated above, and having considered the record in this case in a light most favorable to Ms. Bryant, the motion for summary judgment [D.E. 18] is GRANTED as to both the *quid*

*pro quo* and the hostile working environment claims. A final judgment will be issued separately.

DONE and ORDERED in chambers in Miami, Florida, this 1st day of October, 2004.

_____
Adalberto Jordan
United States District Judge

Copies to:    Magistrate Judge Brown
              All counsel of record